In the Matter of WILLARD D. LIBBY et al., Appellants, against O. LAURENCE ANGEVINE et al., Constituting the Zoning Board of Appeals of the Town of Irondequoit, Respondents, and HAROLD WEICHMAN, Intervenor-Respondent.

Fourth Department, July 9, 1959.

*Harris, Beach, Keating, Wilcox, Dale & Linowitz (Elliott Horton, 3rd, of counsel), for appellants.*

*Emmett J. Schnepp for respondents.*

*Robinson, McCarthy & Williams (Mitchell T. Williams of counsel), for intervenor-respondent.*

GOLDMAN, J. Zoning Board of Appeals of the Town of Irondequoit granted intervenor-respondent Weichman a temporary and conditional permit for a period not to exceed five years to " erect a sea plane hangar for the purpose of operating a marine and sea plane base * * * including the sale of gasoline and oil, boats, motors and airplanes, and the rental of storage space for boats and airplanes ". Petitioners-appellants, who are residents living in proximity to the site, opposed the granting of the permit and now appeal from the Special Term order, in their article 78 proceeding, which confirmed the Zoning Board of Appeals' determination.

Appellants argue that the findings of the board are conclusory, not supported by facts, not in harmony with the purposes of the Zoning Ordinance and that generally the board exceeded its authority in granting the permit. We cannot agree with these contentions and believe that the grant of the permit meets the requirements of subdivision c of section 32 of the town's Zoning Ordinance. The board attached various conditions to this temporary permit which are calculated to safeguard and protect the rights of the appellants, and specifically provided for a revocation of the permit in the event of noncompliance with its terms.

Petitioners-appellants, however, further attack the granting of the permit because of the failure of intervenor-respondent to have complied with section 249 of the General Business Law before applying for the permit. They assert the presence of another sea plane base in the vicinity of the site in question and operating therefrom requires the annulling of the permit because

it is contrary to the declared public policy of the State as set forth in section 249 (prohibits the issuance of the permit for another base in close proximity to the existing one). This objection presents a more serious aspect which has been considered but once by the courts of this State. The stated purpose of section 249 is to regulate establishment and use of airports and definitely states that " it is hereby declared as a matter of public policy * * * that the establishment of a privately owned airport closer to existing airports than the radii defined in subdivision three * * * is a public nuisance and a hazard "— and should " be prevented ". Subdivision 3 lists requirements for spacing airports but provides that the Commissioner of Commerce may waive these requirements " upon application of the governing body of the * * * town ". It is clear that the Zoning Board of Appeals is not the governing body, but is appointed by that body, namely the Town Board.

In his memorandum the Special Term Justice recited that immediately to the south of intervenor-respondent's site there is an existing sea plane hangar which has been in operation for eight years. He fully considered the effect of section 249 but held that " That section refers to ' airports '. It is in derogation of the common law and may not be held to apply to * * * the right to erect a seaplane metal hangar for a marine and seaplane base. * * * If the Legislature wishes to regulate the establishment of seaplane bases, it must specifically provide with respect to them." (17 Misc 2d 80, 83.) With this conclusion we cannot agree. · In article 14 of the General Business Law the Legislature has set forth under section 240 certain definitions. Subdivision 5 thereof defines " Airport " as meaning " any landing area used regularly by aircraft for receiving or discharging passengers or cargo; or for the landing and take-off of aircraft being used for personal or training purposes ". In subdivision 4 it defines " Landing area " as " any locality either of land or water, including airports and intermediate landing fields, which is used or intended to be used for the landing and take-off of aircraft, whether or not facilities are provided for shelter, servicing or repair or aircraft or for receiving or discharging passengers or cargo ". By these definitions an " Airport " includes a locality where aircraft land or take off on water. The dangers sought to be prevented by section 249 are surely just as great whether the aircraft uses land or water for landing.

The only case bearing on this subject is *Matter of Underhill* v. *Board of Appeals of Town of Oyster Bay* (17 Misc 2d 257,

affd. 273 App. Div. 788, affd. without opinion 297 N. Y. 937). True, this concerned an airfield on land, but as indicated we believe this does not call for different treatment from a sea plane base. While at first reading the *Underhill* decision may seem to establish the principle that compliance with section 249 may be a condition precedent to application to the Zoning Board of Appeals it was not the principal point which controlled the court's determination. The court considered eight reasons why the permit should not have been granted. It was particularly impressed with the failure of the Board of Appeals to make its consent " subject to any conditions or safeguards whatsoever " (17 Misc 2d 263). In the instant appeal the board was quite meticulous in the conditions with which it surrounded the granting of the permit.

It is unnecessary, for the purposes of our decision, to establish the priorities of procedure regarding section 249. It is abundantly clear from this statute that the permit granted intervenor-respondent cannot be implemented by the installation of the operation until the necessary waiver has been secured from the Commissioner of Commerce. Orderly procedure would probably dictate that before the Town Board should make such application under section 249 it should know that its Zoning Board of Appeals, concerned with whether such a use would be in harmony with the zoning ordinances, had approved the granting of permit. Until such action had taken place the Town Board could only speculate as to the action of the Board of Appeals and might well be doing a useless act until the Zoning Board of Appeals had made its determination. This method of disposition in no manner contravenes the general rule that a local ordinance tending to abrogate or take precedence over a statute establishing public policy is invalid. The granting of power to a municipality does not have the effect of permitting the local legislative body to override State law and policy. (See *Matter of Consolidated Edison Co. of N. Y.* v. *Village of Briarcliff Manor,* 208 Misc. 295.)

Thus, the granting of the permit by the Zoning Board of Appeals should be confirmed, even though its action, standing alone, does not empower intervenor-respondent to operate the proposed base until there has been compliance with section 249 of the General Business Law.

All concur. Present — McCurn, P. J., Kimball, Williams, Goldman and Halpern, JJ.

Order affirmed, without costs of this appeal to any party.